## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR

THE PREMISES ARE DESCRIBED AS FOUR STORY YELLOW BRICK ROW HOUSE WITH BLACK SHUTTERS WITH WHITE TRIM. THE NUMBERS      ARE BLACK IN COLOR AND ARE AFFIXED ABOVE THE FRONT DOOR WHICH IS BLACK IN COLOR. THERE ARE RED STEPS WITH BLACK RAILINGS LEADING TO THE FRONT DOOR.

I, Jill Vorndran, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Washington Field Office, being duly sworn, depose and state as follows:

1.    I have been employed as a Special Agent of the FBI since August 2003, and am currently assigned to the Washington Division, Northern Virginia Resident Agency.  In the Washington Division, I am currently assigned to investigate Sexual Exploitation of Children (SEOC) violations of federal law.  I have gained expertise in the conduct of such investigations through formal training and on-the-job training with more experienced agents.

2.    As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.    This affidavit is being submitted in support of an application for a search warrant for the property identified, the residential property located at                         ,
Washington, D.C., for evidence in violation of Title 18, United

1

States Code, Section 2252A(a)(5)(B) (Certain activities relating to material constituting or containing child pornography), including, but not limited to, visual images depicting minors engaged in sexual activity and related electronic mail messages and transmission data.  Based upon the information summarized in this application, I have reason to believe that evidence of such a violation is located at this location.

### Statutory Authority

4.    Title 18, United States Code, Section 2252A, entitled "Certain activities relating to material constituting or containing child pornography", provides, in part, that:

(a) Any person who -

(1) knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography;

(2) knowingly receives or distributes –

any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or

any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer;

(3) knowingly reproduces any child pornography for distribution through the mails, or in interstate or

2

foreign commerce by any means, including by computer;

(5)(B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer,

Shall be punished as provided in subsection (b).

5.    Title 18 USC § 2256, defines the term "minor" as any person under the age of eighteen years.

6.    Title 18, United States Code, Section 2256(8)(A) defines child pornography as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where - (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.  For purposes of this application for a search warrant, child pornography is defined as indicated at Title 18, United States Code, Section 2256(8)(A).

### Use of Computer Related Technology Generally

7.    Computers and computer technology have revolutionized

3

the way in which child pornography is produced, distributed, and utilized. Computers have also revolutionized the way in which sex offenders interact with one another and their victims. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were significant costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings and telephone calls. Any reimbursement would follow these same paths.

8. The development of computers has changed all of this. Computers serve four functions in connection with child pornography: production, communication, distribution, and storage. Pornographers can now produce both still photographs (commonly referred to as "pics") and movie images directly from a common video camera. The camera is attached, using a cable, directly to the computer using a device called video capture board. This device turns the video output into a form that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred or printed out directly from

4

the computer.  The captured image can be edited like a
photograph.  The image can be lightened, darkened, cropped, and
manipulated in a wide variety of ways.  The producers of child
pornography can also use a device known as a scanner to transfer
photographs into a computer-readable format.  As a result of this
technology it is relatively inexpensive and technically easy to
produce, store, and distribute child pornography.  There is the
added benefit to the pornographer that this method of production
does not leave as large a trail for law enforcement to follow as
have methods that have been used in the past.

9.  Previously, preferential sex offenders[1] had to rely on
personal contact, U.S. mail, and telephonic communications in
order to sell, trade, or market child pornography.  The
development of the computer has changed that.  A device known as
a modem allows any computer to connect to another computer
through the use of telephone lines.  By connecting to a host
computer, electronic contact can be made to literally millions of
computers around the world.  A host computer is one that is
attached to a dedicated network and serves many users.  These
host computers are sometimes commercial concerns, such as AOL and
MSN which allow subscribers to dial a local number and connect to
a network which is in turn connected to their host systems.

---

[1]See Child Molesters: A Behavioral Analysis, Kenneth V. Lanning, p.37, 4th Edition, Sept. 2001, National
Center for Missing & Exploited Children.

These service providers allow electronic mail service between subscribers and sometimes between their own subscribers and those of another networks. Some of these systems, including AOL and MSN, offer their subscribers the ability to communicate publicly or privately with each other in real time in the form of "chat rooms."

10.    Contact with others in this on-line format can be either very open and at the same time anonymous, in front of everyone else who happens to be in the same chat room at the same time, or very private and personal in the form of person to person Instant Messages.  This communication structure is ideal for the preferential sex offender.  The open and anonymous communication allows the user to locate others of similar inclination and still maintain his anonymity.  Once contact is established, it is then possible to send text messages and graphic images to a trusted conspirator.  In addition to the use of large service providers, preferential sex offenders can use standard Internet connections, such as those provided by business, universities, and government agencies to communicate with each other and to distribute pornography.  These communications links allow contacts around the world.

11.    Additionally, these communications can be quick, relatively secure, and anonymous.  These advantages are well known and are the foundation of commerce and communication

6

between preferential sex offenders on the Internet.

12.   The computer's ability to store images in digital form makes them an ideal repository for pornography.  A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  Magnetic storage located in host computers adds another dimension to the equation.  It is almost as easy to store an electronic image on a computer located half a world away as it is to store one locally.  It is possible to use a video camera to capture an image, process that image in a computer with a video capture board and to save that image to storage in another country.  Once this is done, there is no readily apparent evidence at the scene of the crime.  It is only with careful laboratory examination of electronic storage devices that it is possible to recreate the evidence trail.

13.   The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography.  Pornography can be electronically mailed to anyone with access to a computer and modem.  With the proliferation of commercial services that provide both electronic mail services and chat services, the

computer is now the preferred method of distribution of
pornographic materials.

### Background Information - The Internet

14.  Based on my training and experience, I know that the
Internet is a world wide network of computer networks.  A network
is a system of interconnected computer systems and terminals.
This connectivity allows data to be stored and exchanged between
computers remotely.  Many individuals and businesses obtain their
access to the Internet through businesses known as Internet
Service Providers ("ISPs").

15.  The Internet offers a number of facilities that allow
users to access, transmit, and exchange information including the
World Wide Web ("www"), File Transfer Protocol ("FTP"),
electronic mail ("E mail"), and postings on newsgroups.  The www
allows users to display and access data in a multimedia format.
FTP is a method of transferring and receiving files between
computer systems.  E mail is a method for exchanging electronic
correspondence or other information between computer users.  A
newsgroup is an Internet site that is devoted to a particular
area of interest or discussion.  Users may send or post messages
and responses to be read at any time by others, much like a
bulletin board.

16.  An Internet Service Provider (ISP) is a business that
provides access to the Internet and the World Wide Web.  Services

8

provided by an ISP include computer accounts, Internet access, electronic mail (e-mail), shell accounts (computer accounts on a computer running the UNIX operating system), and connection to the Internet via a telephone line and a modem.  Given the interstate and international nature of the Internet, all ISP computers that are connected to the Internet are used in interstate or foreign commerce or communication.

17.  ISPs offer their customers access to the Internet through computer systems they administer and typically offer a variety of services, including electronic mail (e mail), data storage and on line chat rooms.  ISP customers often use a home computer, which communicates through a modem over a telephone line, to access an ISP's computer system.  Often, a customer accesses the ISP's computer system by using a username and password.  The username is typically a nickname or other pseudonym chosen by the user.

### America Online

18.  America Online (AOL), is an ISP offering subscribers the ability to communicate online with other individuals through chat rooms, e-mail and/or instant messaging.

A.  A chat room is an electronic meeting room provided by AOL and other similar services, which allows Internet users to have group conversations.  For example, within the AOL network there are two categories of chat rooms, they are AOL created chat

9

rooms and AOL member created chat rooms. Within these two categories exist various general topic areas and within these topic areas exist the various chat rooms.

B.    E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the recipient's mail server and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server allows users to post and read messages and to communicate via electronic means, as well as attaching and sending various types of files including graphic files.

C.    "Instant messaging" (IM) is real-time typewritten conversation between individuals, much like an oral conversation, and is used to conduct one-on-one conversations.

19.    To communicate using AOL, each subscriber must have access to a computer which communicates through a modem connected to telephone and cable lines with the central computer system located in Vienna, Virginia. Each subscriber can communicate with other AOL users via E-mail or in real time through chat rooms, private chat rooms or instant messages when the other subscriber is also online. Within the system, text messages and graphic images (such as photographs) can be sent to a subscriber, or to any person with an Internet e-mail address. Both text and

10

graphics files can be saved to the computer's hard drive or other electronic media for access and printing at any time.

20. Another feature offered to AOL subscribers is a "buddy list." Through this feature an AOL subscriber can maintain a list of individual AOL screen names that they may wish to have contact with. This feature allows an individual to determine when their "buddies" are online.

21. Every computer connected to the Internet must have a unique address known as an IP (Internet Protocol) address. The IP address is a numeric address written as a set of four numbers separated by dots, for example 130.102.42.17. The address provides a unique identification of a computer and the network it belongs to.

## FACTUAL BACKGROUND

22. Between 11/18/2005 and 1/10/2006, at varying times, an undercover agent (UC) of the CyberCrime Unit of the Spanish Guardia Civil (GC), Madrid, Spain, through the use of an undercover computer, made contact with an individual boasting that he possessed large quantities of child pornography and travels to South America to have sex with minors. This individual, utilizing the email addresses of

_____.com and _____.com, sent images

11

of child pornography via the internet to the UC in Madrid, Spain, as well as performed live sex acts via an internet web cam.

23. Between 11/18/05 and 1/10/2006, the individual called the UC via telephone and the telephone number, showed on the caller id in Spain. The individual was using a web cam to show a live streaming picture of himself during the conversation from his residence in Washington, D.C.

24. Public records checks by GC provided the following subscriber records for the telephone number described in paragraph 23: Pablo A. Rodriguez (Rodriguez), alias Pablo A. Sanguinetti and Pablo Rodriguez Sanguinetti, date of birth ___ ___ :, social security number ___ ___ lome address of ___ ___ '. 20007.

25. On or about 1/16/2006, the UC arranged with Rodriguez to meet in Madrid on 1/18/2006 in order for Rodriguez to have sex with a five year old girl, who Rodriguez believed the UC would introduce him to.

26. On 1/18/2006, at approximately 14:30:00, Pablo Antonio Justo Rodriguez Sanguinetti was arrested by the Spanish Civil Guard in Madrid, Spain and remains detained in Spain pending court proceedings there. Rodriguez provided the following identifying information upon arrest: Date of birth of ___ ___, United States Residency Card ___ , and home address of ___ ___ : D.C.

12

27.  On 1/18/2006, Rodriguez admitted to the GC, in the presence of an attorney, that over the past ten years, he has had electronic communications over the internet, to include "chat", with individuals from all over the world.  Rodriguez admitted to exchanging pornographic material, in the form of videos and photographs, primarily of children.  This communication took place from a computer located at his residence at

28.  On 1/18/2006, the Spanish Civil Guard conducted a search of Rodriguez's belongings and recovered seven cd-roms containing images of child pornography.  Rodriguez further admitted that this was part of his collection of child pornography, the rest of which is located in his residence at                          , Washington, D.C. Based upon his statements to authorities in Spain, Rodriquez is believed to be the sole occupant of the premises.

29. On 1/18/2006, in response to a subpoena, AOL provided the following subscriber information for the AOL screen name parorodriguez:  Pablo Rodriguez, of

**Additional Bases To Search The Subject Location**

30.  In addition to the above bases, other factors demonstrate that there is probable cause to believe that evidence

of the above-described criminal activities will be found in the
residence of Rodriguez at

D.C. This conclusion is based upon my experience and training
relating to the types of records and items that persons engaged
in child sexual exploitation typically keep with them, as well as
on the facts recited above. Such evidence includes computer
files and documents, correspondence, records and other materials
relating to the purchase, sale, transfer, ordering, or receipt of
or payment for the materials set forth in the preceding
paragraphs and any other materials involving the sexual
exploitation of children within the meaning of Title 18, U.S.
Code, Sections 2251-2256. All of these materials are property
which constitutes evidence of violations of Title 18, U.S. Code,
Section 2251, et seq.

31. Computers frequently store records, documents, and
materials reflecting the types of communications and evidence of
the violations detailed above. Because of Rodriguez's use of
computer communications facilities in connection with his
criminal activity described above, it is likely that his personal
computer and the related records, documents, and materials will
contain evidence of the planning, execution, and purpose of that
criminal activity.

32. The acquisition, storage, and dissemination of Internet
website information and related image files almost by definition

14

involve the use of computer-related property that includes
computer hardware, computer software, computer-related
documentation, passwords, and data security devices.  (Each of
these categories is further defined below).  Such property is
used to physically establish, operate and secure the computer.

### Evidence of the Crime

33.  In addition to his use of his computer and related
equipment as instrumentalities of the offenses recited herein,
there is probable cause to believe that Rodriguez also used his
computer and related electronic storage devices to collect,
store, maintain, retrieve, conceal, transmit, and use electronic
data in the form of electronic records, documents, and materials
which constitute evidence of the offense.  Such electronic data
in the form of electronic records, documents, and materials,
including those used to facilitate communications constitutes
evidence of the commission of a criminal offense.  These
materials are therefore subject to seizure pursuant to Rule 41 of
the Federal Rules of Criminal Procedure, and the devices used to
store or facilitate storage of such materials may be retained as
evidence in the commission of a crime for a reasonable period of
time and may be examined, analyzed, and tested for a reasonable
period of time as evidence in the commission of a crime.

34.  This electronic data may be more fully described as any
information stored in the form of electronic, magnetic, optical,

15

or other coding on computer media or on media capable of being read by a computer or computer-related equipment. This media includes but is not limited to any fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives, and diskettes, tape drives and tapes, optical storage devices, laser disks, or other storage devices.

35. The phrase "records, documents, and materials" as used above, including those used to facilitate communications, includes all of the foregoing items of evidence in whatever form and by whatever means such records, documents, or materials may have been created or stored. Those forms and means of storage and creation include but are not limited to any handmade form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, videotapes, motion pictures, photocopies); or any information on an electronic or magnetic storage device (such as floppy diskettes, hard disks, and CD-ROMS), as well as printouts or readouts from any magnetic storage device.

16

## Seizure of Equipment and Data

36.   Based upon my knowledge, training and experience, I
know that in order to completely and accurately retrieve data
maintained in computer hardware or on computer software, to
ensure accuracy and completeness of such data, and to prevent the
loss of the data either from accidental or programmed
destruction, it is often necessary that some computer equipment,
peripherals, related instructions in the form of manuals and
notes, as well as the software utilized to operate such a
computer, be seized and subsequently processed by a qualified
computer specialist in a laboratory setting.   This is true
because of the following:

a.   The volume of evidence.   Computer storage devices
(such as hard disks, diskettes, tapes, laser disks, Zip drives,
USB pen drives, etc.) can store the equivalent of thousands of
pages of information.   Additionally, a user may seek to conceal
criminal evidence by storing it in random order with deceptive
file names.   Searching authorities are thus required to examine
all the stored data to determine which particular files are
evidence or instrumentalities of criminal activity.   This sorting
process can take weeks or months, depending on the volume of data
stored and it would be impractical to attempt this kind of data
analysis on-site.

      b.   <u>Technical requirements</u>.  Analyzing computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. Thus it is difficult to know prior to the search which expert possesses sufficient specialized skills to best analyze the system and its data.  No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden", erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

    37.  Due to the volume of the data at issue and the technical requirements set forth above, it may be necessary that the above-referenced equipment, software, data, and related instructions be seized and subsequently processed by a qualified computer specialist in a laboratory setting.  Under appropriate circumstances, some types of computer equipment can be more readily analyzed and pertinent data seized on-site, thus eliminating the need for its removal from the premises.  One

18

factor used in determining whether to analyze a computer on-site
or to remove it from the premises is whether the computer
constitutes an instrumentality of an offense and is thus subject
to immediate seizure as such-- or whether is serves as a mere
repository for evidence of a criminal offense.    Another
determining factor is whether, as a repository for evidence, a
particular device can be more readable, quickly, and thus less
intrusively analyzed off site, with due consideration given to
preserving the integrity of the evidence.    This, in turn, is
often dependent upon the amount of data and number of discrete
files or file areas that must be analyzed, and this is frequently
dependent upon the particular type of computer hardware involved.
As a result, it is ordinarily impossible to appropriately analyze
such material without removing it from the location where it is
seized.

        38.    Based upon my knowledge, training, and experience, and
the experience of other law enforcement personnel with whom I
have spoken, I am aware that searches and seizures of evidence
from computers taken from the subject premises commonly require
agents to seize most or all of a computer system's input/output
peripheral devices, in order for a qualified computer expert to
accurately retrieve the system's data in a laboratory or other
controlled environment.    Therefore, in those instances where
computers are removed from the subject premises, and in order to

fully retrieve data from a computer system, investigators must seize all magnetic storage devices as well as the central processing units (CPU) and applicable keyboards and monitors which are an integral part of the processing unit. If, after inspecting the input/output devices, system software, and pertinent computer-related documentation it becomes apparent that these items are no longer necessary to retrieve and preserve the data evidence, such materials and/or equipment will be returned within a reasonable time.

## CONCLUSION

39. Based on the above information, there is probable cause to believe that Title 18, United States Code, Section 2252A, which makes it a federal crime for any person to receive, possess or distribute child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer, has been violated by a resident of for                                D.C. 20007.

40. I respectfully request that this Court issue a search warrant for                                  . 20007 all

20

appurtenances thereto, authorizing the seizure of the items described in Schedule B.


                              Jill Vorndran, Special Agent
                              Federal Bureau of Investigation


SUBSCRIBED TO AND SWORN TO
BEFORE ME THIS  JAN 2 3 2006


United States Magistrate Judge

DEBORAH A. ROBINSON
U.S. MAGISTRATE JUDGE

21

IN THE UNITED STATES DISTRICT COURT FOR THE

District of Columbia


IN THE MATTER OF THE SEARCH OF:
                                )
THE PREMISES KNOWN AS           ) Case No.
:                        NW,    )
Washington, D.C. 20007          )

## ATTACHMENT A - Description of Place to be Searched

The location                        NW, Washington, D.C.
20007  is a four-story, yellow painted brick, row house.  There
are black shutters and white trim.  The numbers '      ' are black
and over the front door.  The front door is painted black with
red steps leading up to it and black railings.

1

IN THE UNITED STATES DISTRICT COURT FOR THE

District of Columbia


IN THE MATTER OF THE SEARCH OF:
                                    )
THE PREMISES KNOWN AS               ) Case No.
                     NW             )
Washington, D.C. 20007              )


**ATTACHMENT B - LIST OF ITEMS TO BE SEIZED**

        1. Any and all electronic data in the form of records,
documents, and materials, tapes, cassettes, cartridges, streaming
tape, commercial software and hardware, computer disks, disk
drives, monitors, computer printers, modems, tape drives, disk
application programs, data disks, system disk operating systems,
magnetic media floppy disks, tape systems and hard drive and
other computer related operation equipment, in addition to
computer photographs, graphic interchange formats and/or
photographs, slides or other visual depictions of such graphic
interchange format equipment which may be, or are used to
visually depict child pornography, child erotica, information
pertaining to the sexual interest in child pornography, sexual
activity with children or the  distribution, possession or
receipt of child pornography, child erotica or information
pertaining to an interest in child pornography or child erotica.


2

2.    Any and all correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).  Title 18, United States Code, Section 2256(1) defines "minor" as any person under the age of eighteen years.

3.    Any and all books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

4.    All originals and all copies and all negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

5.    Any and all motion picture films and video cassettes of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

6.    Any and all correspondence offering to transmit through interstate commerce including by United States Mails or by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

7.    Any and all correspondence identifying persons transmitting, through interstate commerce including by United States Mails or by computer, any visual depiction of minors

3

engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

8.    Any and all books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

9.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

10.    Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

11.    Any and all diaries, notebooks, notes and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit

4

conduct, as defined in Title 18, United States Code, Section 2256(8)(A).

12. Any and all materials and photographs depicting sexual conduct between adults and minors.

13. Any and all "usb drives" and computer media storage devices.

14. Any and all documents containing travel information, to include airline tickets and itineraries.

15. Any and all documents containing the screen names _____.com and _____.

5